# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

MICHAEL PHILPOTT,          )        CASE NO. 5:24-cv-580
                                 )
                                 )
          PLAINTIFF,      )        CHIEF JUDGE SARA LIOI
                                 )
                                 )
vs.                           )
                                 )        **MEMORANDUM OPINION AND**
                                 )        **ORDER**
CITY OF STOW, et al.,        )
                                 )
                                 )
          DEFENDANTS.   )

In this lawsuit, plaintiff Michael Philpott ("Philpott") seeks damages for various alleged violations of his constitutional rights under 28 U.S.C. § 1983. (Doc. No. 1.) All defendants have moved for judgment on the pleadings. One such motion was filed by defendant City of Stow (the "City"), along with Stow Police Officers Stephan Miller ("Miller"), Samantha Wike ("Wike"), and Kristopher Maruna ("Maruna," together with Miller and Wike, the "Officers"). (Doc. No. 14.) Defendant Summit County Sheriff Deputy Douglas Quiner ("Quiner") moved separately for judgment on the pleadings. (Doc. No. 18.) Philpott opposes both motions. (Doc. Nos. 19, 22.) For the reasons discussed below, the motions for judgment on the pleadings are **GRANTED in part and DENIED in part**.

## I.      BACKGROUND

Before outlining the facts of this dispute, the Court must determine which portions of the record it can properly consider. Ordinarily, in ruling on a Rule 12(c) motion, the Court "must look to the pleadings only, and any documents referenced in the pleadings that are central to the dispute," and "cannot consider items attached to the motion or the opposition[.]" *Bd. of Trustees*

*of Toledo Area Sheet Metal Workers Pension Plan v. Karpathia Funding Grp., Inc.*, 704 F. Supp. 3d 799, 802 (N.D. Ohio 2023). But an exception to that rule exists when video footage "'blatantly contradict[s]' or 'utterly discredit[s]'" the plaintiff's allegations. *Bell v. City of Southfield, Michigan*, 37 F.4th 362, 364 (6th Cir. 2022) (quoting *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)). If "indisputable video evidence contradicts" the pleadings, plaintiff's "allegations are implausible." *Id.* This exception is warranted when defendants invoke qualified immunity, which is not "just a defense to liability" but "immunity from the costs and burdens of suit in the first place." *Id.* Here, defendants rely on body camera footage that was not attached to Philpott's complaint in arguing that they are entitled to immunity. (*See* Doc. No. 16 (submitting body camera footage as Exhibit A to Doc. No. 14).) Thus, the Court accepts Philpott's allegations as true, unless they are blatantly contradicted by that body camera footage. *See, e.g.*, *Black v. City of Royal Oak*, No. 23-12371, 2024 WL 4220711, at *2 (E.D. Mich. Sept. 17, 2024) ("[T]he Court views the allegations in the light most favorable to Black, except where they are 'wholly incredible' or 'blatantly contradicted' by the officers' body cam footage." (citations omitted)).

### A.    Traffic Stop and Philpott's Arrest

On July 1, 2023, at 6:27 p.m., Wike pulled Philpott over. (Doc. No. 1, at 5.) Philpott alleges he did not commit a "crime or infraction," and that Wike pulled him over because she "falsely assumed" he had drugs. (*Id.* at 5, 9.) Body camera footage of the encounter, however, paints a "fuller picture." *Bell*, 37 F.4th at 365. Wike pulled Philpott over because he had "a theft warrant out of Las Vegas" from "a while ago." (Doc. No. 16, at 1:31–2:35.) After informing Philpott of the warrant, Wike explained that she had to check to "see if they want you or not." (*Id.*) Wike returned to her cruiser and relayed Philpott's information to a police dispatcher over the radio. (*Id.*

at 3:25–3:38.) In response, the dispatcher confirmed that Philpott had an "original for larceny out of Las Vegas," with a "hold" for "nationwide extradition." (*Id.* at 3:51–4:38.)

The body camera footage of the encounter ends there, at 6:30 p.m. (*Id.* at 5:00.) By Philpott's telling, between 6:30 p.m. and 7:07 p.m., the Stow Police dispatcher contacted Las Vegas Police about the warrant. (Doc. No. 1, at 5.) Philpott alleges that, at 7:08 p.m., he was arrested, despite defendants being put on notice that they were "not following FBI procedure" and Las Vegas Police refusing "to make the call[.]" (*Id.*) According to Philpott, after his arrest, Maruna and Wike "performed [an] illegal search on [his] car until 8:30p for drugs by tearing apart [his] car interior panels, seat covers & wiring in violation of established Ohio & Federal case law." (*Id.*) Eventually, Philpott's car was impounded. (*Id.* at 6–7.)

Philpott, meanwhile, was transported to Summit County Jail. (*Id.* at 6.) He alleges that, upon arrival, the Las Vegas arrest warrant "didn't pop up" and was "removed . . . from the System already." (*Id.* at 6–7 (quotations marks omitted).) Supporting Philpott's account is a document attached to the complaint from the Summit County Sheriff's Office, which states that "[t]he warrant was in the system when Stow Police Department detained [Philpott] and the warrant was then taken out of the system by LVMPD prior to [Philpott's] arrival at the jail," but ultimately "was faxed by Stow Police Department at the request of Lt. Quiner to the jail." (Doc. No. 1-11, at 1; *see also* Doc. No. 1, at 6–7.) Neither party has produced the warrant. Ultimately, Philpott was held at the jail for a week before being released. (Doc. No. 1, at 7.)

## B.    Procedural History

In 2023, Philpott sued the City concerning the same arrest, alleging violations of his constitutional rights. *See Philpott v. City of Stow*, No. 5:23-cv-1885, 2024 WL 22101, at *1 (N.D. Ohio Jan. 2, 2024) (Lioi, J.). Because he proceeded *in forma pauperis*, the Court conducted a

3

screening of his complaint under 28 U.S.C. § 1915(e)(2), which mandates dismissal of any *in forma pauperis* action that fails to state a claim on which relief can be granted. *Id.* Finding that Philpott had not sufficiently alleged a *Monell* claim[1] against the City, the Court dismissed the case pursuant to § 1915(e)(2). *Id.* at *2.

Earlier this year, Philpott filed this lawsuit, which concerns the same arrest. He again names the City as a defendant but adds claims against the Officers and Quiner. (Doc. No. 1, at 1.) He asserts that his complaint arises under "42 U.S.C. § 1983 against the defendants for Violations of US Constitutional violations of the 4th & 14th Amendment for UNREASONABLE seizure of [him] & UNREASONABLE Search & Seizure of [his] car[.]" (*Id.*) Philpott alleges several constitutional claims against defendants.[2] Because the claims defy easy summary, the Court reproduces them verbatim:

> FIRST CLAIM Officer Wike & Miller unreasonable 2-hour traffic stop & search from 6:30p to 8:30p when I didn't break any Ohio law. This unreasonable stop led to an unreasonable search & seizure of my car because of Wike, Maruna & Miller PD unconstitutional investigation for drugs with their drug dog & carelessness in removing my car panels, vents & wires. This illegal search was done because of "advance search & seizure" training giving to Stow Police which all the WIKE, MILLER & MARUNA followed. The unconstitutional search resulted in damages to my car panels & wires resulting in estimated damages to my car of $3,902.27.

> SECOND CLAIM Wike, Maruna & Miller unreasonable seizure of my car included a refusal to let my mom & wife pick up my car. Stow PD refused to allow my car to be towed home. My car was towed my car Infront of my mom & son under the Color of Stow City of STOW Ordinance 303.08(a)(7). Furthermore, STOW ordered my car to be towed by Joes Auto which over charged Towing fees & damages of $489.91.

> THIRD CLAIM - MILLER & QUINER knowingly & willingly conspired to deprive me of constitution protection against illegal arrest and seizure with attempted illegal extradition. MILLER & Quiner unreasonably detained me without bringing me to magistrate or Judge in Summit County Jail for a week as scheme to cover up for Stow illegal search & arrest which didn't find any drugs. The

---

[1] *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

[2] A fifth claim, labeled in the complaint as the "FOURTH CLAIM," concerns a non-moving (and possibly unserved) defendant. (Doc. No. 1, at 9–10.) The Court therefore does not reproduce or address that claim here.

extradition arrest didn't follow any Ohio or Federal Law. MILLER did not follow Stow PD Mutual Aid Policy (326) that requires warrant confirmation from a supervisor or executive official in Las Vegas, NV. This mutual aid Police specifically lists aid to only Ohio Agencies which excludes interstate extradition (326.4). Quiner in furtherance of the conspiracy to deprive me of my rights, joked with Miller about passing the blame to the next shift, while Quiner goes on vacation. This constitutional violation resulted $2,194 IN damages due to missed work & other expenses to me & my Wife Rocelyn Hechanova.

. . .

FIFTH CLAIM - City of STOW trained 3 officers to illegally search & seize my car because they assumed I had drugs. Police of Stow illegal arrest & training was evidenced by the blank arrest report lacking any law justifying my arrest & seizure of my car. Stow Police then passed me off to the Summit County Sheriff without a legit warrant. City of STOW trained their officers in advanced Search & Seizure classes according to WIKE which include tearing apart door panels, vents & car seats to find drugs. STOW ignored & dismissed my complaint which itself sets a Policy & protection for their officers to continue with their Constitutional violations.

(Doc. No. 1, at 9–10.) Defendants answered Philpott's complaint and moved for judgment on the pleadings. (Doc. Nos. 14, 18.) All defendants argue that they are entitled to qualified immunity as to Philpott's individual capacity claims. (Doc. No. 14, at 6–8; Doc. No. 18, at 3–5.) The City and the Officers also argue that Philpott fails to state any *Monell* claim (Doc. No. 14, at 5–6), and that the claims against them are barred by the doctrine of res judicata. (*Id.* at 4–5.) Philpott opposes both motions. (Doc. Nos. 19, 22.) The City and the Officers replied, but Quiner did not. (Doc. No. 21.)

## II.    STANDARD OF REVIEW

Under Rule 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). The Court applies the same standard of review to a motion for judgment on the pleadings as it does for a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6): "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Moderwell v.*

*Cuyahoga Cnty., Ohio*, 997 F.3d 653, 659 (6th Cir. 2021) (citations and quotation marks omitted). "A Rule 12(c) motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.* (citations and quotation marks omitted).

To withstand a motion for judgment on the pleadings, a "complaint need not contain 'detailed factual allegations.'" *LM Ins. v. Criss for Est. of Szuhay*, 716 F. App'x 530, 533 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "But it must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). While *pro se* pleadings are liberally construed and held to less stringent standards than pleadings drafted by lawyers, *pro se* plaintiffs must still meet basic pleading requirements, and courts need not conjure allegations or construct claims on their behalf. *See Erwin v. Edwards*, 22 F. App'x 579, 579–80 (6th Cir. 2001).

## III.    DISCUSSION

### A.    Res Judicata

The City and the Officers argue that the dismissal of Philpott's prior case bars his claims against them here. (Doc. No. 14, at 4–5.) The Court agrees only in part. "Res judicata bars a subsequent action between the same parties or their privies based upon the same claims or causes of action that were or could have been raised in a prior action." *Burton v. Cleveland Ohio Empowerment Zone*, 102 F. App'x 461, 463 (6th Cir. 2004) (citations omitted).

Under federal law, a case dismissed under § 1915(e) has preclusive effect in a subsequent *in forma pauperis* suit concerning the same facts. *See, e.g.*, *Clemons v. Ohio Bureau of Workers' Comp.*, No. 17-4092, 2018 WL 1845871, at *1–2 (6th Cir. Mar. 8, 2018) (affirming dismissal of subsequent *in forma pauperis* action based on prior dismissal under § 1915); *Burton*, 102 F. App'x

at 463 (similar); *Smith v. Morgan*, 75 F. App'x 505, 507 (6th Cir. 2003) (similar). That is true even if the plaintiff asserts additional claims or legal theories in a subsequent case, so long as the new allegations stem from the same underlying facts. *See, e.g.*, *Clemons*, 2018 WL 1845871, at *2; *Burton*, 102 F. App'x at 463.

Philott's prior case against the City was dismissed under § 1915(e). *Philpott*, 2024 WL 22101, at *1. In the instant action, Philpott again proceeds *in forma pauperis*, so the prior dismissal precludes Philpott from reasserting claims against the City. *See, e.g.*, *Clemons*, 2018 WL 1845871, at *1. Philpott resists that conclusion, arguing that his complaint includes "corrections" as well as "new & more clear accusations[.]" (Doc. No. 19, at 2.) Still, those new allegations against the City arise out of the same underlying event—the July 2023 traffic stop and arrest—and could have been raised in the prior case. *See, e.g.*, *Clemons*, 2018 WL 1845871, at *2; *Burton*, 102 F. App'x at 463.

Philpott also asserts various claims against the Officers. Although they were not defendants in the prior action, the Officers argue that res judicata bars the claims against them because they are in privity with the City. (Doc. No. 14, at 4 n.1.) To the extent Philpott asserts claims against the Officers in their official capacities, res judicata bars those claims because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). Consistent with that rule, because Philpott's claims against the entity (here, the City) are barred, so too are any claims against the Officers in their official capacities.

Accordingly, the claims against the City and the Officers in their official capacities are barred by res judicata and must be dismissed under 28 U.S.C. § 1915(e)(2).

Res judicata does not block Philpott's claims against the Officers in their individual capacities, however, which were not asserted in the prior action.[3] Under the rule of differing capacities, a "party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity." *Mitchell v. Chapman*, 343 F.3d 811, 823 (6th Cir. 2003) (citation and quotation marks omitted) (collecting cases and holding that the rule of differing capacities allowed plaintiff to assert individual capacity claims against defendants, even though claims against them in their official capacities were barred).

### B. Section 1983 Claims Against the Officers and Quiner in their Individual Capacities

Turning to the remaining claims, Philpott alleges that the Officers and Quiner deprived him of his constitutional rights in several ways. (Doc. No. 1, at 9.) The Officers and Quiner argue that they are entitled to qualified immunity because Philpott alleges no plausible violations of any clearly established constitutional right. (Doc. No. 14, at 6–8; Doc. No. 18, at 3–5.)

While 28 U.S.C. § 1983 allows plaintiffs to seek damages for deprivations of constitutional rights, the qualified immunity doctrine shields government officials from liability if their actions did not violate clearly established constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (citations omitted). Although questions of qualified immunity are usually resolved at "summary judgment and not dismissal under Rule 12," *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015)

---

[3] In his brief in opposition, Philpott argues that he asserts claims against the Officers in their individual capacities. (Doc. No. 19, at 2.) Philpott did not explicitly allege as much in his complaint, but defendants do not dispute the point. "[W]hile it is clearly preferable that plaintiffs explicitly state whether a defendant is sued in his or her 'individual capacity,' failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice." *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (citation omitted). Here, the Officers clearly knew they were being sued in an individual capacity. Most telling, they raise qualified immunity as a defense to Philpott's claims, which is only available to the Officers insofar as they are being sued in their individual capacities. (Doc. No. 14, at 6–8; Doc. No. 18, at 3–5; Doc. No. 13, at 7; Doc. No. 12, at 4.)

(collecting cases), "district courts have a duty to address qualified immunity when it is properly raised prior to discovery." *Myers v. City of Centerville, Ohio*, 41 F.4th 746, 758 (6th Cir. 2022) (citation and quotation marks omitted). Indeed, "the 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims against government officials [will] be resolved prior to discovery.'" *Pearson*, 555 U.S. at 231–32 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 n.2, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). So, while "a plaintiff is generally not required to negate an affirmative defense [like qualified immunity] in a complaint," if "the validity" of a qualified immunity defense is "apparent from the face of the complaint" then judgment on the pleadings may be "appropriate." *Myers*, 41 F.4th at 757–58 (citations and quotation marks omitted).

"A defendant is not entitled to qualified immunity at the pleadings stage if (1) the facts alleged make out a violation of a constitutional right and (2) that right was clearly established when the event occurred so that a reasonable official would have known that his conduct violated it." *Id.* at 757 (cleaned up). While the former can sometimes be resolved at the pleadings stage, the latter often requires consideration of facts not available prior to discovery. So, where qualified immunity turns on whether a right was clearly established, the Sixth Circuit has expressed a "general preference" against granting immunity at the pleadings stage because that "inquiry may turn on case-specific details that must be fleshed out in discovery." *Id.* at 758–59 (citation and quotation marks omitted). But "if the complaint fails to allege facts plausibly showing the violation of a constitutional right (regardless of whether that right was clearly established), granting qualified immunity is appropriate on the pleadings" in a § 1983 action. *Id.* at 759 (citations omitted).

### 1.    Initial Stop

Philpott alleges that Wike and Miller "unreasonabl[y]" stopped his vehicle because he did not "break any Ohio law." (Doc. No. 1, at 9.) The Fourth Amendment requires that an officer have reasonable suspicion to stop a car. *United States v. Pyles*, 904 F.3d 422, 424 (6th Cir. 2018) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). Reasonable suspicion exists when the owner of a vehicle has a warrant for his arrest. *Id.* at 424–25 (collecting cases).

While Philpott contends that Wike had no permissible justification for the stop (Doc. No. 1, at 5, 9), uncontroverted body camera footage shows that Wike was aware Philpott had an arrest warrant. Wike immediately told Philpott that "the reason I stopped you today is it looks like you got a theft warrant out of Las Vegas." (Doc. No. 16, at 1:31–1:36.) Wike explained that she had to check to "see if they want you or not." (*Id.* at 2:22–2:30.) In their initial encounter, Wike relayed to Philpott the warrant's issuing jurisdiction, the alleged offense, and the fact that the warrant contained certain extradition information. (*Id.* at 1:31–2:35.) In subsequent police communications between Wike and a police dispatcher (*id.* at 3:51–4:38), the same information is reiterated, corroborating Wike's initial reasonable suspicion. *See Dunn v. Pietraszkiewicz*, No. 1:24-cv-303, 2025 WL 277754, at *8 (N.D. Ohio Jan. 23, 2025) (relying on subsequent information to "confirm[]" officers' observations supporting probable cause).

Body camera footage blatantly contradicts—and thus renders implausible—Philpott's allegation that Wike had no justification for stopping his car. *See Bell*, 37 F.4th at 364. Instead, both the footage and documents attached to the complaint make it clear that Wike believed Philpott had a warrant, which created reasonable suspicion to justify the stop. *See Pyles*, 904 F.3d at 424–25; *Johnson v. Hamilton Cnty. Gov't*, No. 1:19-cv-304, 2023 WL 11979766, at *6 (E.D. Tenn.

10

Mar. 29, 2023) (concluding officer had reasonable suspicion and that "traffic stop was justified" where officer "acquired information that would lead a reasonable officer to suspect an individual with an outstanding warrant was inside [a car]" (citation omitted)). Because Philpott has not plausibly alleged that the initial traffic stop violated the Fourth Amendment, defendants are entitled to qualified immunity on that aspect of Philpott's claims.

2.    *Arrest*

Philpott next asserts that Miller and Quiner "knowingly & willingly conspired to deprive [him] of constitution protection against illegal arrest and seizure with attempted illegal extradition." (Doc. No. 1, at 9.) Defendants construe his arrest allegations as a claim for false arrest (Doc. No. 14, at 7–8; Doc. No. 18, at 3–5), a characterization Philpott does not dispute.

To state a Fourth Amendment false arrest claim, a plaintiff must plausibly allege a lack of probable cause. *Royal Oak*, 2024 WL 4220711, at *6, 10 (granting motion to dismiss § 1983 action where plaintiff failed "to allege that the officers lacked probable cause to arrest him"). Thus, an arrest warrant—which may be issued only on a showing of probable cause—is "normally a complete defense to a federal constitutional claim[.]" *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005); *Nerswick v. CSX Transp., Inc.*, 441 F. App'x 321, 322 (6th Cir. 2011). And police officers need not have a warrant in hand. In effectuating an arrest, officers can rely on information from dispatchers or a law enforcement database regarding the existence of a warrant. *See, e.g.*, *Milbeck v. George*, No. 23-cv-525, 2024 WL 4794670, at *4 (W.D. Wis. Nov. 14, 2024) (dismissing false arrest claim because "a temporary felony warrant was entered into [police database] for plaintiff's arrest on charges of felony stalking," which "alone is sufficient to support plaintiff's arrest"), *appeal filed*, No. 25-1061 (7th Cir. Jan. 3, 2025). Philpott emphasizes repeatedly that he did not break any Ohio law, but it is of no consequence that the arrest warrant

11

was issued by an out of state jurisdiction. *See, e.g.*, *Justice v. Kuhnapfel*, No. 13-cv-659, 2014 WL 2434139, at *3 (E.D.N.Y. May 29, 2014) (dismissing false arrest claim because an out of state warrant, "entered into the National Crime Information Center ("NCIC") database, provided sufficient probable cause for Defendants to arrest Plaintiff as a fugitive from justice"); *Case v. Kitsap Cnty. Sheriff's Dept.*, 249 F.3d 921, 927–28 (9th Cir. 2001) (collecting cases and finding probable cause to justify arrest where law enforcement database indicated defendant had an out of state arrest warrant); *United States v. Burnett*, No. 21-68, 2022 WL 17828325, at *5 (E.D. Ky. Nov. 23, 2022) (finding that officers had probable cause to place suspect under arrest based on out of state warrants), *recommendation adopted*, 2022 WL 17824416 (Dec. 20, 2022).

At a few points in the complaint, Philpott appears to allege that his initial arrest violated the Fourth Amendment because no arrest warrant existed. (*See, e.g.*, Doc. No. 1, at 6 ("Stow PD Lt Miller drove me to Summit County Jail without proof of any warrant."); *id.* at 7 ("I emailed Stow for a copy of the warrant & they emailed me 'We do not have a copy of it with our File[.]'" (citation omitted)).) But, as explained above, body camera footage renders those allegations implausible. (*See* Doc. No. 16, at 1:31–2:35, 3:51–4:38.) Both the uncontroverted footage and Philpott's own allegations indicate that an arrest warrant was in a police database at the time of his arrest, which is "a complete defense to a federal constitutional claim" for false arrest. *Voyticky*, 412 F.3d at 677; *Milbeck*, 2024 WL 4794670, at *4; *Justice*, 2014 WL 2434139, at *3.

Philpott contends that the warrant was "removed . . . from LEADS (sic) [Law Enforcement Automated Data System][4] before [he] made it to Summit County Jail." (Doc. No. 1, at 10.) Even accepting that allegation as true, it is irrelevant to the constitutionality of Philpott's initial arrest because the warrant was alleged to have been "removed" *after* Philpott's arrest. (*Id.* at 7.) The

---

[4] Ohio Admin. Code 4501:2-10-01(P).

existence of probable cause is judged based on the Officers' knowledge at the time of the arrest—not Philpott's arrival at the jail. *See Ratmansky v. City of Olmsted Falls*, 496 F.3d 609, 614–15 (6th Cir. 2007). And even if there was some doubt that Philpott would be extradited (Doc. No. 1, at 7–8), his initial arrest was still proper. As explained above, a false arrest claim turns on probable cause, and a jurisdiction's "lack of intent to extradite . . . cannot alter whether probable cause exists[.]" *United States v. Jones*, 260 F. App'x 769, 774 (6th Cir. 2008); *Burnett*, 2022 WL 17828325, at *5 (applying *Jones* to conclude that "the deputies [] would have had probable cause to place [the defendant] under arrest on the out-of-state warrants even if the deputies had not called to confirm the status of the warrants"); *United States v. Boyce*, No. 1:10-cr-62, 2011 WL 1085792, at *4 n.5 (N.D. Ind. Mar. 21, 2011) ("This Court agrees that extradition issues are separate from issues related to probable cause to arrest an individual named in a valid warrant."). Philpott has not plausibly alleged a § 1983 claim pertaining to his initial arrest, so defendants are entitled to judgment on that aspect of Philpott's claims.

### 3. *Detention and Extradition*

The rest of Philpott's arrest allegations concern extradition procedures and his seven-day detention. (Doc. No. 1, at 9 ("MILLER & Quiner unreasonably detained me without bringing me to a magistrate or Judge in Summit County Jail for a week as scheme to cover up for Stow illegal search & arrest which didn't find any drugs. The extradition arrest didn't follow any Ohio or Federal Law."); Doc. No. 22, at 5 ("Defense clearly didn't follow extradition laws regarding the under ORC 2963.03 & 18 U.S.C. § 3182.").) He alleges that, after his arrest, "Miller & Quiner discussed that Las Vegas 'removed the warrant from the System,'" and that "Las Vegas PD did not provide any legal written demand to Ohio to justify [his] extradition." (Doc. No. 1, at 7–8.) He further alleges that "Quiner did not have a governor extradition warrant or any laws to justify

13

detaining [him.]" (*Id.* at 8.) Philpott alleges that by detaining him for one week, despite the fact that the warrant was removed from the system, defendants ran afoul of the Constitution (Doc. No. 1, at 1, 9), federal law, including 18 U.S.C. § 3182 (*id.* at 1, 2, 10), Ohio law (*id.* at 3–4, 9–10), Stow Police department policies (*id.*), and unidentified FBI standards. (*Id.* at 5, 10.)

In his motion, Quiner argues that he "is entitled to qualified immunity because he reasonably relied on a facially valid warrant to hold [p]laintiff at the Summit County Jail." (Doc. No. 18, at 4.)[5] In support of that argument, Quiner cites several cases in which a valid arrest warrant was found to justify an arrest, but those cases do not grapple with the issue of continuing detention where a plaintiff alleges that the status of a warrant changed. (*Id.* at 4–5 (citing *Nerswick*, 441 F. App'x at 322; *Synder v. United States*, 590 F. App'x 505, 513 (6th Cir. 2014); *Walker v. Kroger's*, No. L-93-162, 1994 WL 159764, at *2 (Ohio Ct. App. April 29, 1994).) In their motion, the Officers mention detention and extradition issues only in their recitation of the facts, and briefly suggest in their reply that "none of [Philpott's detention and extradition] assertions undermine [d]efendant's statutory immunities." (Doc. No. 21, at 7.) As such, neither motion squarely confronts Philpott's allegation that the warrant was "cleared [] out" or "removed . . . from the System already" when Philpott arrived at the jail. (Doc. No. 1, at 6–7 (quotations marks omitted).)

Even assuming cases like *Nerswick* govern, construing the complaint in the light most favorable to Philpott, there is factual uncertainty as to the status of the warrant, which precludes judgment on the pleadings. *Moderwell*, 997 F.3d at 659 ("A Rule 12(c) motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." (citations and quotation marks omitted)). There is little clarity about what happened to the

---

[5] Quiner also argues that Philpott failed to allege a conspiracy between Quiner and the Officers. (Doc. No. 18, at 4.) However, Philpott alleges that Quiner was personally involved in his allegedly illegal detention and various extradition violations. (Doc. No. 1, at 6–7.)

arrest warrant when Philpott arrived at jail or what the defendants knew about the validity of the warrant. Because of those uncertainties the Court cannot determine whether Philpott's continued detention after the warrant was "removed . . . from the System" (Doc. No. 1, at 7 (quotation marks omitted)) violated his clearly established constitutional rights. In the end, although it is clear that something happened to the arrest warrant by the time Philpott made it to jail, it is not clear exactly what occurred. Discovery is necessary flesh out those details.[6] In the meantime, insofar as Philpott raises a federal constitutional claim challenging his detention, judgment on the pleadings is improper.

Beyond that, however, Philpott's other extradition and detention claims fail as a matter of law. While Philpott alleges violations of a federal extradition statute (18 U.S.C. § 3182), the Sixth Circuit has long recognized that § 1983 is not the proper vehicle for a plaintiff to seek redress for a "failure to follow formal extradition procedures[.]" *Barton v. Norton*, 106 F.3d 1289, 1299 (6th Cir. 1997). Quite the opposite, it has held that "[n]either the Extradition Clause of the Constitution nor the federal extradition statute purports to confer any right on [a] fugitive." *Id.* at 1297. Philpott points out that some circuits have arrived at the opposite conclusion. (Doc. No. 1, at 2 (citing *Young v. Nickols*, 413 F.3d 416 (4th Cir. 2005)).) That may be true, but this Court sits in the Sixth Circuit and "is bound by the Sixth Circuit's conclusion that failure to comply with established

---

[6] In their factual recitations, defendants' motions point to Exhibit 10 of Philpott's complaint, which is a report from the Summit County Sheriff's Office laying out the details of Philpott's arrest and detention. (Doc. No. 1-11.) The Court recognizes that the report provides information about the status of the warrant that appears to undermine Philpott's claim. Nevertheless, at this juncture, the Court must accept Philpott's factual allegations as true and draw all reasonable inferences from those allegations. Here, Philpott alleges that the warrant was "cleared [] out" or "removed . . . from the System already" by the time he reached the jail. (Doc. No. 1, at 6–7 (quotation marks omitted).) The Court need not consider Exhibit 10 simply because it is attached to the complaint. *See Manning v. Sweitzer*, 891 F. Supp. 2d 961, 964–65 (N.D. Ill. 2012) (not considering police report in all respects, even though it was attached to complaint, because attaching it to the complaint did not mean that the plaintiff "vouched for all the facts in the police report" (citation and quotation marks omitted)).

[extradition] procedures does not deprive the fugitive of any protected right." *Barnett v. Clark*, No. 1:06-cv-235, 2008 WL 189856, at \*8 (E.D. Tenn. Jan. 22, 2008).

Philpott also points out that certain state laws and police department policies may provide protections to a person subject to extradition. (Doc. No. 1, at 4). For example, in one of his reply briefs, Philpott asserts that his weeklong detention violated his "Ohio statutory right to bail & extradition hearings[.]" (Doc. No. 22, at 4.) A violation of those protections, however, is separate and apart from the type of constitutional violations that can be remedied under § 1983. Even if the Officers violated state law, or failed to abide by a department policy, § 1983 is not the proper vehicle to redress those violations. *See, e.g.*, *Kitsap County*, 249 F.3d at 929–30 (finding the issue of "[w]hether the deputies violated a state law or an internal departmental policy" not to be "the focus of our inquiry" where plaintiff alleged deputies violated state law by failing to take her before a judge to contest an out of state warrant pursuant to state law); *Boyce*, 2011 WL 1085792, at \*4 ("Jail policy may require confirmation that the issuing agency is willing to extradite, but it does not mean that detaining the Defendant in the circumstances of this case violated his Constitutional rights."); *see also Monroe v. McNairy Cnty., Tenn.*, 520 F. Supp. 2d 917, 920 (W.D. Tenn. 2007) ("A state ought to follow its law, but to treat a violation of state law as a violation of the Constitution is to make the federal government the enforcer of state law. State rather than federal courts are the appropriate institutions to enforce state rules." (citation and quotation marks omitted)).

### 4. Search and Seizure of the Car

Finally, Philpott alleges that the Officers (but not Quiner) illegally searched his vehicle by "tearing apart [his] car interior panels, seat covers & wiring[.]" (Doc. No. 1, at 5–6.) After the search, Philpott claims the Officers illegally impounded his car, and that, when it was returned, it

16

was damaged. (*Id.* at 7.) A search or seizure of a vehicle conducted in the absence of a search warrant is per se unreasonable under the Fourth Amendment, unless a defendant establishes that an exception to the warrant requirement applies. *Taylor v. City of Saginaw*, 922 F.3d 328, 336 (6th Cir. 2019) (reversing dismissal of § 1983 action where the plaintiff alleged a warrantless search and the defendant failed "to meet its burden in establishing an exception to the warrant requirement").

Here, the Officers offer no argument as to warrant exceptions in their initial motion and have not carried their burden of showing that a search warrant was not required. Accordingly, Philpott has alleged a plausible violation of his Fourth Amendment rights related to the search and seizure of his car.

As an initial matter, Philpott correctly points out that the Officers do not contest his allegations about the search or seizure of his car in their motion for judgment on the pleadings. (Doc. No. 19, at 4; *see* Doc. No. 14, at 8 ("Defendants Miller, Wike and Maruna are immune from prosecution because they had probable cause to stop, detain, and arrest Mr. Philpott.").) Only in their reply brief do the Officers assert that the "search and impoundment of [p]laintiff's vehicle were proper," relying on various warrant exceptions. (Doc. No. 21, at 6.) Merits aside, the Court cannot consider those arguments because they were raised for the first time in their reply brief. *Manning v. Sweitzer*, 891 F. Supp. 2d 961, 966–67 (N.D. Ill. 2012); *In re FirstEnergy Corp. Sec. Litig.*, 316 F. Supp. 2d 581, 599 (N.D. Ohio 2004). The Officers seem to suggest it was not "necessary" to discuss the search and seizure in their opening brief because "no video or recorded evidence of any search of [p]laintiff's vehicle exists in the record." (Doc. No. 21, at 6–7.) Contrary to the Officers' assertion, an exhibit to Philpott's complaint—labeled "Exhibit 1 Damage from Search"—includes photos of the Officers appearing to search his car by removing various pieces.

(Doc. No. 1-2.) But even if it did not, Philpott does not need to provide video or photo evidence to allege a plausible claim, and his complaint is replete with factual allegations of an illegal search. (Doc. No. 1, at 5–10.)

Moreover, even if the Court could properly reach the Officers' arguments, they would fail, at least in part. First, they falter in relying on a doctrine that has been narrowed by the United States Supreme Court to justify their search of the car. The Officers posit that a "lawful custodial arrest justifies a contemporaneous, warrantless search of the person arrested and the immediate surrounding area, including the suspect's automobile, even when the suspect has been separated from the car prior to the search." (Doc. No. 21, at 6 (citing *United States v. Mans*, 999 F.2d 966, 968–69 (6th Cir. 1993) and *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981)).) But the rule expressed in *Mans* and *Belton* was narrowed by the Supreme Court in *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). *See* Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 7.1 (6th ed. 2024). In *Gant*, the Court held that police officers "may search a vehicle incident to a recent occupant's arrest *only if* the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 556 U.S. at 351 (emphasis added); *see also United States v. Buford*, 632 F.3d 264, 269 (6th Cir. 2011) (recognizing that *Gant* "rejected any broad understanding of *Belton*"). The Officers do not argue that Philpott was within reaching distance of the car during the search, nor do they suggest that they expected to find evidence of the crime for which Philpott was arrested. Left only with an argument that the car was "searched in connection with" Philpott's arrest (Doc. No. 21, at 6), the Officers do not satisfy the requirements of *Gant.*

18

And while the Officers point to several cases to justify the impoundment of the car (Doc. No. 21, at 6), they do not offer any argument as to why the warrant exceptions discussed in those cases apply here. *See United States v. Snoddy*, 976 F.3d 630, 634 (6th Cir. 2020) ("Officers exercising their discretion to impound a vehicle must do so according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity. Similarly, [i]n order to be deemed valid, an inventory search may not be undertaken for purposes of investigation, and it must be conducted according to standard police procedures." (citations and quotation marks omitted)); *United States v. Harvey*, 16 F.3d 109, 112 (6th Cir. 1994) (finding no Fourth Amendment violation where "police lawfully exercised their discretion in deciding to impound the vehicle in the absence of any licensed driver to attend to it, *and they followed departmental policy in doing so*" (emphasis added)). Without more, the Officers have not carried their burden of showing that a warrant exception applies to justify the search or impoundment of the car. *See Taylor*, 922 F.3d at 336 (reversing dismissal where the defendant failed "to meet its burden in establishing an exception to the warrant requirement").

Second, the Officers do not grapple with Philpott's allegation that his car was damaged during the search. "Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful[.]" *United States v. Ramirez*, 523 U.S. 65, 71, 118 S. Ct. 992, 140 L. E. 2d 191 (1998). Of course, law enforcement officers may need to damage property during a search, so whether a Fourth Amendment violation occurred turns on the factual question of whether the damage is unreasonable. *Hill v. McIntyre*, 884 F.2d 271, 278 (6th Cir. 1989) (citing *Dalia v. United States*, 441 U.S. 238, 258, 99 S. Ct. 1682, 60 L. Ed. 2d 177 (1979)).

Here, Philpott alleges that the Officers tore apart his "car interior panels, seat covers & wiring[.]" (Doc. No. 1, at 5.) After getting his car back from impound, he alleges that he "noticed damage to interior panels inside [his] car" and that it "was obvious panels on the passenger side was taken apart & not put back together properly resulting in damage." (*Id.* at 7.) He backs up those assertions with photos showing the Officers removing various pieces from his vehicle during the search. (Doc. No. 1-2.) Philpott also attaches an invoice from an auto body shop estimating the costs for certain repairs ($3,902.27) consistent with those allegations. (Doc. No. 1-8.) Other courts have denied qualified immunity at the pleadings stage based on similar damage allegations. *See, e.g.*, *Bass v. Hattum*, No. 3:23-cv-3014, 2024 WL 3744659, at *1, 2–3 (D.S.D. Aug. 8, 2024) (denying motion to dismiss § 1983 claim where plaintiff alleged that during search of vehicle "some items were destroyed or made unusable" (record citation, quotation marks, and alternations omitted)); *Wheeler v. City of Middletown*, No. 16-cv-8857, 2021 WL 2206490, at *7 (S.D.N.Y. June 1, 2021) (denying motion to dismiss §1983 claim where plaintiff alleged search resulted in "permanent destruction" to vehicle (record citation and quotation marks omitted)). Philpott has plausibly alleged that the Officers violated the Fourth Amendment by searching, impounding, and damaging his vehicle.

That still leaves whether those rights were clearly established. At this stage, based on the facts currently before the Court, the Court concludes that Philpott has plausibly alleged violation of a clearly established right. The Sixth Circuit has often repeated the basic rule that "[w]arrantless searches and seizures 'are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *United States v. Lewis*, 81 F.4th 640, 651 (6th Cir. 2023) (quoting *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S. Ct. 2408, 57 L. Ed. 2d 290) (1978) (further citation omitted)). Likewise, "[t]he law has been clear for many years

that '[e]xcessive or unnecessary destruction of property in the course of a search' violates the Fourth Amendment[.]" *Ullerich v. Shrader*, No. 21-cv-2954, 2022 WL 2751650, at *10 (D. Colo. July 14, 2022) (citing *Ramirez*, 523 U.S. at 71); *Hill*, 884 F.2d at 278 (allowing § 1983 claim to proceed to trial where there was a "factual issue as to the reasonableness of the destruction committed in [plaintiffs'] home"). A final determination as to whether those or other cases clearly establish a right that was violated by the Officers "requires factual development regarding the exact circumstances" of the alleged violations. *Moderwell*, 997 F.3d at 665. Further facts, for example, may reveal that the scope of the search was reasonable under existing precedent. Or properly raised arguments may convince the Court that the search and seizure of the car was justified by a warrant exception. *Taylor*, 922 F.3d at 336 ("When the record in this case moves beyond the pleadings stage, the [defendant] is, of course, free to argue anew that one or both of those exceptions do apply, or that some other exception to the warrant requirement might apply.")

The Court today does not find that Philpott will prevail on this claim, only that it is plausibly alleged. And it does not conclude that the Officers will never be able to demonstrate that they are entitled to immunity, only that they have not done so here. The Court holds only that, at this point, the Officers are not entitled to qualified immunity because Philpott has plausibly alleged that the search, seizure, and damage of his car violated his clearly established Fourth Amendment rights.

## IV.  CONCLUSION

For the reasons explained above, defendants' motions for judgment on the pleadings are **GRANTED in part and DENIED in part**. First, to the extent Philpott brings claims against the City or the Officers in their official capacities, those claims are barred by the doctrine of res judicata and are **DISMISSED** under 28 U.S.C. § 1915(e)(2). Second, Philpott fails to plausibly

allege that the Officers or Quiner violated his constitutional rights by stopping his vehicle or arresting him, so defendants are entitled to qualified immunity, and those claims are **DISMISSED**. Third, insofar as Philpott raises a federal constitutional claim challenging his detention, judgment on the pleadings is improper. To the extent he alleges that his detention violated 18 U.S.C § 3182, state law, or local policies, however, his claims fail as a matter of law and are **DISMISSED**. Finally, Philpott has plausibly alleged that the Officers searched, impounded, and damaged his car in violation of his clearly established Fourth Amendment rights, so judgment on the pleadings is improper as to those claims. Because the surviving claims concern only the Officers and Quiner, this case is **DISMISSED** as to the City of Stow. By separate order, the Court will set this case for a status conference to discuss the surviving claims.[7]

       **IT IS SO ORDERED**.

Dated: March 25, 2025

                                 _____
                                   **HONORABLE SARA LIOI**
                                   **CHIEF JUDGE**
                                   **UNITED STATES DISTRICT COURT**

---

[7] After the motions for judgment on the pleadings were fully briefed, Philpott filed two supplemental exhibits (*see* Doc. No. 23), which the Court construed as a motion for leave to amend his complaint. (*See* Order [non-document], 12/9/2024.) In reviewing the exhibits, it does not appear that Philpott is "seeking to amend his complaint to correct deficiencies, add claims, or flesh out existing claims[.]" *Jones v. Experian Info. Sols., Inc.*, No. 14-10218, 2015 WL 13688629, at *1 (D. Mass. June 2, 2015) (collecting cases in which courts "denied leave to amend where the plaintiff seeks only to submit evidence that supports his existing claims, rather than to correct a deficiency in the claims themselves"). Philpott describes his proffered exhibits as "evidence" and they are consistent with the allegations already contained in his complaint (and which coincidentally, survive this motion), so amendment at this juncture "to attach evidence is not necessary, nor is it the appropriate method for submitting evidence." *Id.* at *1. Accordingly, Philpott's motion is denied. The Court notes, however, that even if it considered the exhibits as if they were attached to the complaint, they would not change the analysis and ultimate conclusions above. *See Presnell v. Georgia Bureau of Investigation*, No. 4:10-cv-60, 2010 WL 11520595, at *4 (N.D. Ga. Dec. 28, 2010) (considering exhibit offered in motion to amend as attached to the operative complaint and granting defendants' pending motion to dismiss), *aff'd sub nom. Presnell v. Paulding Cnty., Georgia.*, 454 F. App'x 763 (11th Cir. 2011). Moreover, nothing in the Court's order prevents Philpott from using the exhibits, if properly presented, in support of his surviving claims as this litigation proceeds.